**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------X          **04 CV 5303 (NG) (VVP)**

**CAPITAL DISTRIBUTION SERVICES, LIMITED,**

                              **Plaintiff,**

            **-against-**                                                      <u>**OPINION AND ORDER**</u>

**DUCOR EXPRESS AIRLINES, INC.; MABUTU M.**
**KAMARA, SIMON BARRY; KHADY KAMARA,**
**ABOU KAMARA; and VIVIAN KAMARA,**

                              **Defendants.**
---------------------------------------------------------------------X

**GERSHON, United States District Judge:**

            In this action, plaintiff Capital Distribution Services, Ltd. ("CDS") seeks to recover funds

paid to defendant Ducor Express Airlines, Inc. ("Ducor") for the provision of cargo flights that

Ducor failed to provide. Ducor has confessed judgment on CDS's claim of breach of contract and,

on July 21, 2006, this court granted CDS summary judgment against defendants Mabutu M. Kamara

("Mabutu"), Khady Kamara ("Khady"), and Abou Kamara ("Abou") on its claims of fraudulent

conveyance. In the same order, defendant Abou was preliminarily enjoined from taking any actions

pertaining to certain real properties in Las Vegas, Nevada (the "Las Vegas Properties"), owned by

Abou and defendant Vivian Kamara ("Vivian").

            CDS now moves for certification of a final judgment on its fraudulent conveyance claim

against Abou pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and is prepared to

withdraw its remaining claims against that defendant. In addition, CDS is prepared to withdraw all

of its claims against Abou's wife, Vivian. CDS also seeks an award of its attorney's fees. No

opposition to either the Rule 54(b) motion or the request for an award of attorney's fees has been

1

filed.

**The July 21, 2006 Partial Summary Judgment Order**

The facts underlying the claim against Abou are detailed in the partial summary judgment order entered on July 21, 2006. *See Capital Distrib. Servs., Ltd. v. Ducor Express Airlines, Inc.*, 440 F. Supp. 2d 195 (E.D.N.Y. 2006). Those facts, for brevity's sake, will not be reproduced here. Suffice to say that, after considering CDS's claims, this court found that "the transfers from Ducor to Abou, made between November 30, 2004 and February 2, 2005, totaling $242,500, constitute fraudulent conveyances . . . ." *Id.* at 207. This court, therefore, "grant[ed] summary judgment accordingly" and noted that "[u]pon a properly supported application at the conclusion of this action, CDS shall be entitled to recover its attorney's fees for prosecuting this claim from Ducor and Abou." *Id.*

Also based on the facts considered at the time, this court found that "Abou has taken steps to dissipate and conceal his assets and, unless the court issues an injunction, will continue to do so, which would frustrate CDS's attempts to collect a judgment against him, causing CDS irreparable injury." *Id.* at 210. This finding was based largely on Abou's purchase of the Las Vegas Properties with the funds he improperly received from Ducor. In response to his doing so, CDS commenced an action against Abou and Vivian in Nevada state court in November 2005 and filed notices of pendency on the Las Vegas Properties to prevent their transfer or encumbrance.[1] Shortly thereafter,

---

[1] CDS contends that Vivian and Abou are joint title owners of one of the Las Vegas Properties, located at 3313 Conterra Park Avenue. As noted in the July 21, 2006 partial summary judgment order, a purchase agreement executed in connection with the property at 3313 Conterra Park Avenue indicates "Abou's intention to purchase the property jointly with Vivian." *Id.* at 202. However, "[t]he record does not indicate whether Abou and Vivian closed on the property as planned." *Id.*

Abou took steps to borrow an additional $43,000 against the property located at 6052 Draft Horse Drive and to put the property up for sale. After detailing these facts in the July 21, 2006 partial summary judgment order, this court found that "the record as a whole demonstrates that Abou . . . has been engaged in a pattern of conduct designed to frustrate any efforts by CDS to collect the money owed to it by Ducor", and thus enjoined Abou "from taking any action to transfer, dispose of, encumber, or otherwise reduce or jeopardize his interest in the real properties located at 6052 Draft Horse Drive, North Las Vegas, Nevada, 89031; 1732 Mizzenmast Avenue, North Las Vegas, Nevada 89032; and 3313 Conterra Park Avenue, North Las Vegas, Nevada 89081 during the pendency of this action." *Id.* at 211.

**Facts Arising After the July 21, 2006 Partial Summary Judgment Order**

On September 1, 2006, Abou's Las Vegas attorneys, Lin & Associates, served upon CDS's Las Vegas attorneys, Sylvester & Polednak, Ltd., a "Notice of Lien for Attorneys' Fees and Costs" against the Las Vegas Properties in order to secure Lin & Associates' claim for attorneys' fees for their representation of Abou and Vivian in the Las Vegas action. (*See* Schneider Aff., Ex. A, Notice of Lien.) The lien, dated August 31, 2006, was filed in the Nevada state court action, and is in the amount of $28,803.76, "plus additional attorneys' fees and costs owed . . . which have not yet been billed." *Id.* The lien was filed, albeit by Lin & Associates, despite the preliminary injunction prohibiting Abou from taking any action which would reduce his interest in the Las Vegas Properties. It was also filed despite the fact that Lin & Associates had not commenced an action against Abou on their claim for unpaid fees.

**CDS's Motion for Rule 54(b) Certification**

Approximately one month after learning of the lien, on October 9, 2006, CDS moved this

court for certification of a final judgment against Abou pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. In its papers, CDS argues that 54(b) certification is necessary to avoid the prejudice which it is likely to suffer as a result of delay in entering and enforcing its judgment against Abou. CDS offers two bases for its conclusion that delay will result in prejudice: (1) the actions of Abou and his attorneys will render an eventual final judgment uncollectible; and (2) the value of the Las Vegas Properties will plummet as a result of the decline of the Las Vegas real estate market.

In support of its first point, CDS alleges that Lin & Associates improperly filed the August 31, 2006 lien either with Abou's consent or at his direction in order to thwart CDS's recovery on its judgment against Abou. CDS argues that, notwithstanding the preliminary injunction, there exists a serious risk that absent prompt entry of final judgment, Abou and his attorneys will succeed in rendering an eventual final judgment either partially or wholly uncollectible. With regard to its second point, CDS asks this court to take note of the "continuing slide in the residential housing market in Las Vegas and nationally", and argues that delay in securing final judgment will render the Las Vegas Properties, which were improperly purchased with CDS's funds, significantly less valuable. Pl.'s Mem., 10.

Finally, CDS seeks recovery of the attorney's fees it incurred in pursuing its fraudulent conveyance claim against Abou. To that end, CDS draws the court's attention to its prior ruling that "[u]pon a properly supported application at the conclusion of this action, CDS shall be entitled to recover its attorney's fees for prosecuting this claim from Ducor and Abou." *Capital Distrib. Servs.*, 440 F. Supp. 2d at 207.

**DISCUSSION**

I.    **CDS's Motion for Certification under Rule 54(b)**

When a district court has resolved at least one but fewer than all of the claims in an action,

Rule 54(b) permits the court to direct the entry of a final judgment "only upon an express

determination that there is no just reason for delay."  FED. R. CIV. P. 54(b).[2]  To obtain a final

judgment under the Rule, therefore, "(1) multiple claims or multiple parties must be present, (2) at

least one claim, or the rights and liabilities of at least one party, must be finally decided within the

meaning of 28 U.S.C. § 1291, and (3) the district court must make 'an express determination that

there is no just reason for delay' and expressly direct the clerk to enter judgment."  *Ginett v.

Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992) (quoting FED. R. CIV. P. 54(b)).

Respect for the "'historic federal policy against piecemeal appeals'" requires that such a

certification not be granted routinely.  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)

(quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).  Nonetheless, "certification

---

[2] Rule 54(b) provides:

> When more than one claim for relief is presented in an action, whether as a
> claim, counterclaim, cross-claim, or third-party claim, or when multiple
> parties are involved, the court may direct the entry of a final judgment as to
> one or more but fewer than all of the claims or parties only upon an express
> determination that there is no just reason for delay and upon an express
> direction for the entry of judgment. In the absence of such determination and
> direction, any order or other form of decision, however designated, which
> adjudicates fewer than all the claims or the rights and liabilities of fewer than
> all the parties shall not terminate the action as to any of the claims or parties,
> and the order or other form of decision is subject to revision at any time
> before the entry of judgment adjudicating all the claims and the rights and
> liabilities of all the parties.

is appropriate where a plaintiff might be prejudiced by a delay in recovering a monetary award."
*Advanced Magnetics*, *Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997); *see*, *e.g.*, *Curtiss-Wright*, 446 U.S. at 11-12; *Ginett*, 962 F.2d at 1097. In *Ginett*, the Second Circuit recognized the importance of Rule 54(b) in light of the "liberal joinder provisions of the federal rules" and the "increased complexity" of modern litigation. 962 F.2d at 1093-95. There, the court found that the plaintiff, who had brought multiple claims against his former employer, was entitled to immediate execution of final judgment on one of his claims: "If Ginett is legally entitled to a judgment on his severance claim, he should be able to execute upon it now, and should not be penalized for combining his separate claims against CTG in one complaint. This is exactly the sort of 'hardship and denial of justice through delay' that rule 54(b) was designed to eliminate." *Id*. at 1097 (quoting *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511 (1950)).

There is no doubt that the first factor under Rule 54(b) is present in this case. CDS has asserted multiple claims for relief against multiple defendants. CDS now seeks entry of final judgment on only one of those claims, namely its fraudulent conveyance claim against Abou.

As for the second factor, Rule 54(b) is not an exception to the final judgment rule that generally governs federal appeals, "for each claim or set of claims certified for appeal must still be 'finally decided' within the meaning of § 1291." *Ginett*, 962 F.2d at 1091 (quoting *Sears, Roebuck*, 351 U.S. at 435). If the decision "ends the litigation [of that claim] on the merits and leaves nothing for the court to do but execute the judgment" entered on that claim, then the decision is final. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Because this court's decision granting summary judgment of $242,500 ended the litigation of CDS's fraudulent conveyance claim against Abou on the merits, and has left nothing

for this court to do but execute its judgment, it is final.

Turning to the third factor, even though Abou has filed no opposition papers, in light of the juridical concerns underlying Rule 54(b), the court will analyze the extent to which those concerns are implicated by CDS's motion. In order to avoid piecemeal appeals, it is necessary to consider whether finally decided claims are separable from the others remaining to be adjudicated, and whether those claims already determined are such that no appellate court will have to decide the same issues more than once even if there were subsequent appeals. *Curtiss-Wright*, 446 U.S. at 8. "Only those claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for Rule 54(b) certification." *Ginett*, 962 F.2d at 1096 (quoting *Sears, Roebuck*, 351 U.S. 900). Here, CDS seeks judgment on its fraudulent conveyance claim against Abou and is prepared to withdraw both any remaining claims against Abou and all of its claims against Abou's wife, Vivian, which claims are related to the claims against Abou. With respect to the claims against the other defendants, in the July 21, 2006 partial summary judgment order, this court engaged in a detailed analysis of the various transfers Ducor made to the several defendants. *See Capital Distrib. Servs.*, 440 F. Supp. 2d at 204-207. Each defendant, and each transfer made to him or her, was considered separately, based on the evidence submitted to the court by both CDS and the various defendants. While the fraudulent conveyance claim against Abou shares a common fact with the claims against the other defendants – namely, that Ducor effected the payments at issue – that fact alone does not make the claims inseparable. Rather, the claim of fraudulent transfer as to Abou relates to specific transactions which are separate and distinct from the fraudulent transactions to the other remaining defendants. Under these circumstances, I do not anticipate that review of CDS's fraudulent conveyance claim against Abou would be mooted by any future developments in this

action, or that the nature of the claim is such that an appellate court would have to decide the same issues more than once even if there were subsequent appeals.

CDS argues that there is not only "no just reason for delay" in entering final judgment on its fraudulent conveyance claim against Abou, but that, to the contrary, CDS will likely suffer severe hardship from such delay. Because CDS faces the real possibility that its judgment will be rendered uncollectible during the pendency of this action, I agree.

As this court noted when granting a preliminary injunction against Abou on July 21, 2006, "Abou has taken steps to dissipate and conceal his assets and, unless the court issues an injunction, will continue to do so, which would frustrate CDS's attempts to collect a judgment against him, causing CDS irreparable injury." *Capital Distrib. Servs.,* 440 F. Supp. 2d at 210. Shortly thereafter, Abou's Las Vegas attorneys, Lin & Associates, filed a lien against the Las Vegas Properties for Abou's alleged failure to pay the attorneys' fees Lin & Associates allegedly earned in connection with the Nevada state court action. The lien, if valid and properly filed, will significantly reduce the value of the properties in question and jeopardize CDS's ability to fully collect the judgment to which it is entitled.

CDS contends that Lin & Associates improperly filed the lien either with Abou's permission or at his direction "[i]n a transparent attempt to defeat CDS' recovery on its judgment against Abou . . . ." Pl.'s Mem., 2. By sanctioning the lien, CDS argues, Abou "seeks to pay his attorneys not from his own pocket, but rather from the Las Vegas Properties, which he purchased with CDS' funds, and whose preservation this Court has recognized as necessary for the collection of CDS' judgment against Abou." *Id*. at 3.

Abou has filed no opposition to the present motion, and thus does not contest CDS's

allegations. It is unnecessary for present purposes to decide whether Lin & Associates acted in collusion with Abou in filing the lien. It is enough to appreciate that the filing of the lien on the Las Vegas Properties suggests that further delay in entering judgment would result in prejudice to CDS. Should additional encumbrances be filed on the properties during the pendency of this action, they could render CDS's eventual judgment either partially or fully uncollectible. Accordingly, this factor militates in favor of immediate certification of the judgment.

Further arguing that the Las Vegas Properties will suffer devaluation during the pendency of this action, CDS calls the court's attention to the "continuing slide in the residential housing market in Las Vegas and nationally." Pl.'s Mem., 10. Specifically, CDS points to a newspaper article in the Las Vegas Review, citing a study from a market research firm, indicating that the Las Vegas residential housing market is anticipated to drop 13% in the near future.

At the outset, it deserves mention that CDS did not enter the Las Vegas residential housing market voluntarily. CDS did not purchase the Las Vegas Properties; Abou did, with CDS's funds. Consequently, CDS's ability to collect its eventual judgment is unfairly dependent on the fluctuations of the housing market. Any reduction in value of the properties will reduce CDS's likelihood of fully recovering its judgment against Abou. The state of the housing market has not been disputed, but even the possibility that the properties' value will suffer decline in the future, from a market downturn, weighs in favor of Rule 54 (b) certification. *See Curtiss-Wright*, 446 U.S. at 11-12 (plaintiff entitled to immediate payment of judgment where he would have otherwise suffered financial loss from the difference between current and statutory prejudgment interest rates).

In sum, under the facts of this case, entry of final judgment will not impinge on sound judicial administration and will prevent prejudice to CDS from delay. There is therefore no just

reason to delay entry of judgment.

## II.    CDS's Motion for Attorney's Fees

In the July 21, 2006 partial summary judgment order, this court found that, "[u]pon a properly supported application at the conclusion of this action, CDS shall be entitled to recover its attorney's fees for prosecuting this claim from Ducor and Abou." *Capital Distrib. Servs.,* 440 F. Supp. 2d at 207. In anticipation of entry of a final judgment on that claim, CDS now makes such application, and requests an award of attorney's fees that it incurred in connection with pursuing its fraudulent conveyance claim against Abou in the amount of $38,490.

As Abou has failed to file any papers in opposition, CDS's application for attorney's fees is granted in full. Based on the court's observations of this matter over time, CDS's counsel, Michael Schneider, Esq., has proceeded efficiently and has reasonably pursued his client's claims against Abou without prolonging the proceedings. Accordingly, CDS is entitled to attorney's fees in the total amount of $38,490.

## CONCLUSION

For the reasons set forth above, CDS's motion for certification of final judgment on its fraudulent conveyance claim against Abou in the amount of $242,500 is granted. In addition, CDS's application for attorney's fees in the amount of $38,490 is granted. The Clerk of Court is therefore ordered to enter final judgment against Abou in the total amount of $280,990.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

Dated:  Brooklyn, New York
          November 16, 2006