UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X       04 CV 5303 (NG) (VVP)

CAPITAL DISTRIBUTION SERVICES, LIMITED,

        Plaintiff,

  -against-                                                    MEMORANDUM AND
                                                                       ORDER

DUCOR EXPRESS AIRLINES, INC.; MABUTU M.
KAMARA, SIMON BARRY; KHADY KAMARA,
ABOU KAMARA; and VIVIAN KAMARA,

        Defendants.
------------------------------------------------------------------------X

**GERSHON, United States District Judge:**

In this action, plaintiff Capital Distribution Services, Ltd. ("CDS") seeks to recover funds paid to defendant Ducor Express Airlines, Inc. ("Ducor") for the provision of cargo flights that Ducor failed to provide. Ducor has confessed judgment on CDS's claim of breach of contract and, on July 21, 2006, this court granted CDS summary judgment against defendants Mabutu M. Kamara ("Mabutu"), Khady Kamara ("Khady"), and Abou Kamara ("Abou") on its claims of fraudulent conveyance. CDS now seeks summary judgment on its claims against defendant Mabutu (1) for waste and misappropriation of Ducor's funds pursuant to section 720 of the New York Business Corporation Law, and (2) to pierce the corporate veil to hold Mabutu liable for Ducor's obligation to CDS. No opposition to CDS's motion has been filed. For the reasons set forth below, CDS's motion is granted.

## FACTS

Many of the facts underlying CDS's claims against Mabutu are detailed in the partial summary judgment order entered on July 21, 2006. *See Capital Distrib. Servs., Ltd. v. Ducor*

1

*Express Airlines, Inc.*, 440 F. Supp. 2d 195 (E.D.N.Y. 2006). There, I granted CDS's motion for summary judgment on its fraudulent conveyance claims against (1) Abou in the amount of $242,500; (2) Khady in the amount of $150,000; and (3) Mabutu in the amount of $43,500. CDS now argues that, pursuant to section 720 of the New York Business Corporation Law ("BCL"), Mabutu is personally liable for these unlawful diversions of Ducor's funds. To that end, CDS stresses that all of the fraudulent conveyances identified above were carried out by Mabutu, and that they were made solely for the benefit of Mabutu and his family members, for no legitimate business purpose, and for no consideration. In addition, based on undisputed facts recited in the partial summary judgment order,[1] CDS also requests that this court hold Mabutu personally liable, under BCL § 720, for $50,000 which Mabutu transferred to a separate bank account, safely out of CDS's reach but at Mabutu's disposal.

CDS also seeks summary judgment on its claim for piercing the corporate veil and contends that Mabutu should be held personally liable for the full amount of CDS's judgment against Ducor,

---

[1] CDS relies on the following facts, as detailed in the partial summary judgment order:

> At approximately 1:58 p.m. on December 20, 2004, Ducor and Mabutu were served by CDS's process server with the summons and complaint in this action, together with an order to show cause why the court should not attach Ducor's bank accounts. At 3:30 p.m. on that day, Mabutu transferred $95,000 from the Ducor Savings Account to Abou and $300,000 from the Ducor Savings Account to BHS New York Corp. ("BHS"). . . . Following the transfers, the balance in the Ducor Savings Account was less than $1,000 and the Ducor Checking Account was overdrawn. Ducor has not acknowledged having any other assets besides the two bank accounts.

*Capital Distrib. Servs.,* 440 F. Supp. 2d at 199. CDS identifies this $300,000 fraudulent transfer as comprised of the following: the above mentioned fraudulent transfers to Khady ($150,000), Mabutu ($43,500), and Abou ($56,500 of the $242,500 identified above), and the $50,000 here at issue. The $50,000 was subsequently transferred to an entity called Albay Travel in Senegal on January 27, 2005, after sitting in the BHS account for 38 days.

i.e., $866,934.45. In support of this claim, CDS recites numerous undisputed facts. First, Ducor acted only through Mabutu, who was responsible for all of Ducor's financial transactions. Second, other than Mabutu, Ducor had only three employees, one of whom was Mabutu's wife, Khady, whom, according to Mabutu, merely followed his instructions. Third, Ducor was undercapitalized. As detailed in the partial summary judgment ruling, after a series of transfers out of its bank accounts on December 20, 2004, Ducor's accounts contained less than $1,000. Even before these transfers, the balance therein was insufficient to satisfy Ducor's $900,000 obligation to CDS. And there is no indication that Ducor had any assets other than those in its two Washington Mutual accounts. Fourth, Mabutu acknowledged that he regarded Ducor's funds as his own and that he routinely took out funds on an "as needed" basis for his personal use. At his deposition, for example, Mabutu testified that he took no salary from Ducor and simply took money when he needed it. He further testified that, while he ordinarily transferred funds from Ducor to his personal account and then paid his expenses from his account, he sometimes paid his personal expenses from Ducor's account directly. Finally, there is no evidence to suggest that any corporate records were maintained for Ducor, or that shareholder or director meetings were held. Mabutu testified that Ducor was a "family business" and that there were no outside officers, directors or shareholders. In fact, Mabutu identified only himself and his wife, Khady, as officers of Ducor, and Khady has resided in Africa since July, 2003; according to Mabutu, she has not engaged in any business activity in New York since that time. Notwithstanding CDS's document requests, Ducor failed to produce any documents demonstrating the existence of a corporate structure, such as minutes of meetings, by-laws, or resolutions.

## DISCUSSION

**I.      Section 720 of the New York Business Law**

Section 720(a)(1) of the New York Business Corporation Law ("BCL") imposes personal liability upon officers and directors of a corporation for, *inter alia*, violation of their duties in the management and disposition of corporate assets, and "[t]he acquisition by himself, transfers to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties." Section 720(b) of the BCL expressly authorizes a judgment creditor to bring an action under section 720. *See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 295 F.Supp.2d 366, 383 (S.D.N.Y. 2003).

"BCL 720 embraces common-law and statutory causes of action imposing liability on directors and covers every form of waste of assets and violation of duty whether as a result of intention, negligence, or predatory acquisition." *Amfesco Industries, Inc. v. Greenblatt*, 172 A.D.2d 261, 265 (1st Dept. 1991). Unquestionably, section 720 imposes liability upon an officer or director who misappropriates corporate funds. *See Brown v. Brown,* 143 A.D.2d 248 (2d Dept. 1988).

Because I have already determined that Mabutu wrongfully and fraudulently transferred $242,500 to Abou, $150,000 to Khady, and $43,500 to himself out of Ducor funds – and because Mabutu has submitted no opposition to CDS's motion – I conclude that Mabutu is personally liable for these transfers under BCL § 720.

In addition, CDS requests that Mabutu be held personally liable for the $50,000 he transferred to the BHS account on December 20, 2004, under BCL § 720. Mabutu effected this transfer shortly after being served with process in this action, moving the funds to an account to which only he had access. CDS contends that Mabutu did so to insulate the funds from a potential judgment in favor of CDS. In light of these facts, and because Mabutu has not opposed CDS's

4

motion or contested the facts therein, I find Mabutu personally liable for the $50,000 under BCL § 720.

## II. Piercing the Corporate Veil

In order to pierce the corporate veil under New York law, it must be established "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997). "[W]hen a corporation is used by an individual to accomplish his own and not the corporation's business, such a controlling shareholder may be held liable for the corporation's commercial dealings as well as for its negligent acts." *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991). The determination of whether to pierce the corporate veil is a fact specific inquiry which may involve the consideration of numerous factors, discussed below. *MAG Portfolia Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001).

### A. Complete Domination

"[C]omplete domination of the corporation is the key to piercing the corporate veil, especially when the owners use the corporation as a mere device to further their personal rather than the corporate business . . . ." *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141-42 (1993). As relevant here, factors to be considered when determining whether a corporation has been dominated include: (1) the absence of the formalities which are attendant to corporate existence; (2) inadequate capitalization; (3) whether funds are put in and removed from the corporation for personal rather than corporate purposes; and (4) the amount of business discretion displayed by the allegedly dominated corporation. *See Passalacqua*, 933 F.2d at 139.

Here, each of the foregoing factors supports a finding that Mabutu completely dominated Ducor. First, Ducor had no functioning board of directors or real officers other than Mabutu. As Mabutu testified, Ducor was a family business with himself as the president and his wife, Khady, the only other nominal officer, who merely followed Mabutu's instructions. In addition, there is no evidence that Ducor recorded or maintained minutes of corporate meetings. Ducor also failed to produce any by-laws or resolutions despite CDS's document requests. In short, Ducor had no separate mind or will of its own, but rather was completely dominated by Mabutu, who used it to achieve his own ends.

Second, Ducor had insufficient funds to satisfy its obligations to CDS, even before its series of fraudulent transfers began. Commencing on November 30, 2004, when CDS first demanded the return of its funds, Mabutu proceeded to strip Ducor of its assets so that CDS would not be able to recover its judgment. By the end of 2004, Ducor's bank accounts were essentially empty.

Third, as Mabutu testified at his deposition, he disregarded Ducor's separate identity and viewed Ducor's funds as his own, taking funds from Ducor at will. In fact, he acknowledged that he sometimes payed his personal expenses directly from Ducor's account. For example, at his deposition Mabutu was presented with a copy of a check which he testified was in payment of his home mortgage.

Finally, Mabutu dominated every aspect of Ducor's affairs. At his deposition, Mabutu testified that he was exclusively responsible for managing Ducor and for all of its financial and other affairs. Mabutu maintained exclusive control over Ducor's bank accounts and was solely responsible for making withdrawals and deposits. In addition, Mabutu testified that Ducor had no bookkeeper and that he was responsible for keeping Ducor's books. In sum, all of Ducor's

6

transactions, including the fraudulent conveyances identified above, were orchestrated by Mabutu. In light of the foregoing facts, I find that Mabutu dominated Ducor such that Ducor was Mabutu's alter ego.

### B. Use of Domination to Perpetrate a Wrong

New York law will not allow the corporate veil to be pierced absent a showing that the defendant's domination was used to commit fraud or another wrong. *See Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1052-53 (2d Cir. 1997). However, "[u]nder New York law, the diversion of funds to make a corporation judgment-proof constitutes a wrong for the purposes of determining whether the corporate veil should be pierced." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, 386 F.Supp.2d 461, 476 (S.D.N.Y. 2005).

As discussed in the partial summary judgment order, Mabutu fraudulently diverted several hundred thousand dollars – substantially all of Ducor's assets – upon being served with a demand for return of CDS's funds and with CDS's pleadings commencing the instant action. By these diversions, Mabutu purposefully rendered Ducor judgment-proof; accordingly, I find that Mabutu used his domination to perpetuate a wrong against CDS.

### C. Mabutu is Personally Liable

In light of the aforementioned facts, I find that CDS has made a sufficient showing that (1) Mabutu completely dominated Ducor and (2) that Mabutu used his complete domination to perpetuate a wrong toward CDS. Because Mabutu so pervasively abused the corporate form to avoid satisfying Ducor's obligations to CDS, it is appropriate to pierce the corporate veil and hold Mabutu personally liable for the judgment against Ducor in the amount of $866,934.45.

**III.     Pre-Judgment Interest**

CDS seeks prejudgment interest on both of its claims against Mabutu. Section 5001(a) of the New York Civil Practice Law and Rules ("CPLR") provides for the payment of prejudgment interest, *inter alia*, "because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." Courts interpreting § 5001 "have without qualification awarded interest as a matter of right whenever any tortious conduct causes pecuniary damage to tangible or intangible property interests." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 695 (2d Cir.1983).

The Second Circuit has held that prejudgment interest is payable on a sum awarded to remedy the waste of corporate assets. *See Lewis v. S.L. & E., Inc.*, 831 F.2d 37, 39 (2d Cir.1987). In addition, prejudgment interest has been awarded where a plaintiff successfully pierced the corporate veil against a corporate principal. *See Mars Electronics of N.Y., Inc. v. U.S.A. Direct, Inc.*, 28 F.Supp.2d 91, 100 (E.D.N.Y. 1998). Accordingly, and because Ducor has filed no opposition to CDS's request for prejudgment interest, I find that CDS is entitled to such interest on both of its claims against Mabutu.

Pursuant to CPLR 5001(b), prejudgment interest is to be computed "from the earliest ascertainable date the cause of action existed . . . ." With respect to its claim for waste and diversion of corporate assets under BCL § 720, CDS is entitled to prejudgment interest from December 20, 2004, the date on which the last of the above mentioned fraudulent transfers was completed. With respect to its veil piercing claim, CDS is entitled to prejudgment interest from March 31, 2005, the date on which Mabutu ceased conducting any business through Ducor, his alter ego.

8

## CONCLUSION

For the reasons set forth above, CDS's motion for summary judgment on its claims against defendant Mabutu (1) for waste and misappropriation, pursuant to BCL § 720, and (2) to pierce the corporate veil to hold Mabutu personally liable for Ducor's full obligation to CDS, is granted. Under its BCL § 720 claim, CDS is entitled to $486,000 plus prejudgment interest from December 20, 2004; under its veil piercing claim, CDS is entitled to $866,934.45 plus prejudgment interest from March 31, 2005. When judgment is entered, the judgment will award CDS $486,000 plus prejudgment interest from December 20, 2004, and $380,934.45 (the full amount of CDS's judgment against Ducor, i.e., $866,934.45, minus the $486,000 CDS will be awarded under its BCL § 720 claim) plus prejudgment interest from March 31, 2005.

**SO ORDERED.**

/s/
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
        May 1, 2007